IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MARCOE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KRISTOPHER P. MARCOE, APPELLANT.

Filed May 7, 2024.   No. A-23-721.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Paul E. Cooney for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Kristopher P. Marcoe was convicted in the district court for Lancaster County on one count of operating a motor vehicle to avoid arrest – subsequent offense, a Class IV felony. He was sentenced to two years' imprisonment, 12 months' post-release supervision, and had his license revoked for two years following his incarceration. He now assigns the sentence imposed by the district court was excessive and that he received ineffective assistance of counsel. For the following reasons, we affirm.

## BACKGROUND

On September 9, 2022, while law enforcement was conducting surveillance on a residence, officers observed a vehicle registered to the individual they were surveilling drive by the house. After law enforcement followed the vehicle, it began to drive at excessive speeds, make quick turns, and weave through residential neighborhoods. Eventually the vehicle returned to the original

- 1 -

residence where officers identified themselves and told the occupant to stop. The driver proceeded to rapidly flee from the officers, cut off several vehicles, and nearly collided with others. Seemingly due to safety concerns, law enforcement did not continue to pursue the vehicle.

Following this incident, officers were informed that Marcoe was the driver and confirmed the information by looking at his prior booking photos. They also became aware that he did not have an active driver's license at the time of the incident. On September 21, 2022, law enforcement located Marcoe and arrested him.

On November 16, 2022, Marcoe was charged with one count of operating a motor vehicle to avoid arrest – subsequent offense, a Class IV felony. As this charge sought an enhanced punishment due to Marcoe previously being convicted of the same crime, the information alleged that he was convicted of the same offense in July 2017. Pursuant to a plea agreement, one of Marcoe's pending charges for possession of a controlled substance was dismissed, and he pled no contest to the operation of a motor vehicle to avoid arrest.

A plea hearing was held on June 13, 2023. At this hearing, the parties stipulated that the prior offense alleged in the information was a valid prior conviction for the purposes of enhancement. The court accepted the stipulation and Marcoe's no contest plea and convicted him of the charge.

A sentencing hearing was held on August 22, 2023, where the court heard from Marcoe, his attorney, and the State. Marcoe's attorney requested a term of probation and stated that Marcoe was trying to turn his life around. He also directed the court's attention to a potential flaw in the conviction. He argued that:

> The statute that [Marcoe] pled guilty to . . . requires an underlying misdemeanor or an underlying felony. Neither of which have ever been presented in this case. He was never charged with an underlying felony even in the very beginning. He was only charged with this particular crime. The other crime he was charged with is not the same incident at all. And so, it can't be used as the underlying felony.

He cited this issue as a reason for the court to levy a lighter sentence. He then informed the court that Marcoe had a medical condition which involved having blood clots in his lungs, heart, and groin. Marcoe then addressed the court and requested a term of probation so that he could help take care of his mother and children. The State then addressed the court and expressed concerns about Marcoe's lengthy criminal history, high risk of recidivism, lack of remorse, and its belief that Marcoe would continue with criminal behavior if given a lighter sentence.

Prior to levying its sentence, the court stated:

> I do take into consideration the generous plea offer that [Marcoe] received in this case, as well as the extensive criminal history of [Marcoe]. His prior attempts at supervision. Also, the extremely high [Level of Service/Case Management Inventory (LSCMI)] score of 30. And the general overall lack of acceptance of responsibility in this case. Mr. Marcoe did make the comment during the [presentence investigation] that he really thinks he could have beat both of these cases. And judging by the comments of counsel here today, counsel questions whether or not this is a valid conviction itself. Although the Court doesn't understand the argument being made.

Mr. Marcoe has had several attempts at supervision and treatment before. And the Court finds that really [an] indicator of . . . of future behavior is a person's prior behavior.

The Court does find pursuant to Nebraska law that there are substantial and compelling reasons why [Marcoe] cannot effectively and safely be supervised in the community on probation.

Having regard for the nature and circumstances of the crime, the history, character, and condition of [Marcoe], the Court finds that imprisonment of [Marcoe] is necessary for the protection of the public because the risk is substantial that during any period of probation [Marcoe] would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of [Marcoe's] crime and promote disrespect for the law.

The court proceeded to sentence Marcoe to 2 years' imprisonment, 12 months of post-release supervision, and revoked his license for 2 years following his release from prison.

## ASSIGNMENTS OF ERROR

Restated, Marcoe assigns the district court abused its discretion in imposing an excessive sentence. Additionally, he assigns that he received ineffective assistance of counsel because his trial counsel (1) failed to consult with him on a regular in-person basis which affected his ability to understand his options and make a fully informed decision concerning his plea deal; and (2) failed to consult with him about the alleged prior conviction and the possibility of challenging it at an enhancement hearing and stipulated to the enhancement without his consent.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirements. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022); *State v. Betts*, 31 Neb. App. 737, 989 N.W.2d 441 (2023). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Excessive Sentence.*

Marcoe first assigns the district court abused its discretion by imposing an excessive sentence. He argues that in failing to sentence him to a period of probation, the district court failed to properly consider his education level, history of employment, receptiveness to probationary treatment, medical condition, and strong support network. He also asserts the court did not consider the statutory factors under Neb. Rev. Stat. § 29-2204.02(2) (Reissue 2016).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). However, it is not necessary for a sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

Marcoe's conviction for operating a motor vehicle to avoid arrest – subsequent offense is a Class IV felony. Class IV felonies are punishable by up to 2 years' imprisonment and 12 months' post-release supervision or a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Marcoe was sentenced to 2 years' imprisonment and 12 months' post-release supervision. While his sentence was the statutory maximum, it is within the appropriate statutory range.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Roth, supra*. A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

We first determine that Marcoe's claim fails to the extent he asserts the district court's sentence did not factor in his education level, history of employment, receptiveness to probationary treatment, medical condition, and strong support network. It is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate. *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, and a sentencing court is accorded very wide discretion in imposing a sentence. *State v. Janis*, 32 Neb. App. 49, 992 N.W.2d 772 (2023). The district court possessed the information regarding Marcoe's personal history and relationships when it sentenced him and chose to not give those factors much weight. Marcoe now essentially requests that we reweigh those factors on appeal, which we refuse to do. Therefore, we determine the district court did not abuse its discretion in concluding that Marcoe's personal history and circumstances did not warrant him being sentenced to a term of probation.

Marcoe also argues the district court abused its discretion by not properly considering the factors under § 29-2204.02, which requires a sentence of probation for Class IV felony convictions in the absence of one or more specific exceptions. *State v. Dyer*, 298 Neb. 82, 902 N.W.2d 687 (2017). Pursuant to § 29-2204.02(2), if a criminal offense is a class IV felony, the court shall impose a sentence of probation unless:

(a) The defendant is concurrently or consecutively sentenced to imprisonment for any felony other than another Class IV felony; (b) The defendant has been deemed a habitual criminal pursuant to section 29-2221; or (c) There are substantial and compelling reasons why the defendant cannot effectively and safely be supervised in the community, including, but not limited to, the criteria in subsections (2) and (3) of section 29-2260. Unless other

reasons are found to be present, that the offender has not previously succeeded on probation is not, standing alone, a substantial and compelling reason.

In concluding that Marcoe was not a good candidate for probation, the district court found that his criminal history and risk of recidivism were substantial and compelling reasons why he could not be safely supervised in the community.

Marcoe possesses a substantial criminal history. From 1998 to 2017, Marcoe acquired 22 traffic citations which included several citations for speeding, careless driving, and negligent driving amongst other infractions. In 1998, he was adjudicated in juvenile court of burglary. And then in a separate incident in 1998, he was adjudicated in juvenile court for third degree assault and theft (less than $300).

Marcoe's adult criminal history began in 2000 when he was convicted and sentenced for criminal mischief. In 2001, he was sentenced on another criminal mischief conviction and an additional assault conviction. For the assault conviction, he received a term of probation for which he was unsatisfactorily released.

In separate incidents in January 2002, Marcoe was sentenced for two criminal mischief and a failure to disperse convictions. In March, he was sentenced for attempted possession of a controlled substance and received a term of probation which was later revoked. In July, he was sentenced for making a false report, minor in possession, and failure to appear. In November, he was sentenced on a disturbing the peace conviction.

In March 2003, Marcoe was sentenced on a third degree assault conviction. In April, he was sentenced for stealing money or goods less than $500 and failing to appear. In June, he was sentenced on two more convictions for driving during suspension and speeding. In December, he was sentenced on a trespassing charge.

In January 2004, he was sentenced for minor in possession and zero tolerance convictions. In February, he was sentenced for possession of drug paraphernalia. In April, he was sentenced for driving under the influence – first offense.

In 2005, Marcoe was sentenced for refusing to comply with an order of an officer. In 2006, he was sentenced on six more convictions for speeding, not having proof of insurance, driving during suspension, fictitious display of plates, making false statements to a police officer, and violating a stop sign.

In August 2007, he was sentenced on his conviction for obstructing a peace officer. In October, he was sentenced for attempted possession of a controlled substance and received a term of probation which was later revoked. In November, he was sentenced on two more convictions for driving during revocation and speeding.

In June 2008, Marcoe was sentenced on his possession of drug paraphernalia and failure to appear charges. In separate incidents in November, he was sentenced for disturbing the peace, driving during revocation, and possession of marijuana. In December, he was sentenced on a conviction for driving while suspended.

In June 2009, Marcoe was sentenced in relation to a conviction for driving while revoked. In October, he was sentenced for a fictitious display of plates conviction. In 2011, he was sentenced for driving during revocation, leaving the scene of an accident, and careless driving. He was then

sentenced on another conviction for driving during revocation, for which he successfully completed probation.

In January 2012, Marcoe was sentenced on two convictions for failing to appear and for driving while not having an operator's license. In 2013, he was sentenced for obstructing a peace officer. In 2014, he was sentenced for failing to appear. In 2015, he was sentenced for making a false report.

In July 2017, Marcoe was sentenced on several convictions for carrying a concealed weapon, operating a motor vehicle to avoid arrest, and careless driving. He was placed on probation for the first two convictions, which was later revoked. Also in July, he was sentenced for reckless driving and making a false report. In October, he was sentenced for a driving during suspension conviction.

In 2018, Marcoe was sentenced on another driving during suspension conviction. In 2019, he was sentenced for speeding and driving during revocation. In February 2020, he was sentenced for attempted possession of a controlled substance.

In September 2021, Marcoe was sentenced for obstructing a peace officer and making a false report. In 2022, he was sentenced for driving during suspension and careless driving. And in 2023, he was convicted and sentenced in the present proceeding for operating a motor vehicle to avoid arrest-subsequent offense.

In addition to his criminal history, Marcoe was also deemed to be a "Very High" risk to reoffend on his LSCMI. This assessment scored him as a "Very High" risk in the alcohol/drug problem category, and a "High" risk in the criminal history, education/employment, procriminal attitude, and antisocial pattern categories. He was also scored as a "Medium" risk in the leisure/recreation and companions categories, and a "Low" risk in the family/marital category. On Marcoe's Simple Screening Instrument and Standardized Risk Assessment Reporting Format, he scored as a "Moderate to High" risk for substance abuse. And on his Standardized Risk Assessment Reporting Format, he was assessed as a "High Risk" for recidivism.

Given Marcoe's criminal history and high risk of recidivism, we cannot say the district court's refusal to sentence him to a term of probation was unreasonable. Therefore, we conclude the district court did not abuse its discretion in finding that there were substantial and compelling reasons as to why Marcoe was unfit for probation under § 29-2204.02(2).

For the same reasons the district court did not abuse its discretion in refusing to sentence Marcoe to a term of probation, it did not abuse its discretion in imposing his sentence. Marcoe's criminal history displays an indifference toward abiding by the law. As such, we conclude the district court did not abuse its discretion in revoking Marcoe's license for two years and sentencing him to the maximum terms of imprisonment and post-release supervision allowed for a Class IV felony conviction.

*Ineffective Assistance of Counsel.*

We next address Marcoe's assignments that his trial counsel was ineffective for (1) failing to consult with him on a regular in-person basis which affected his ability to understand his options and make a fully informed decision; and (2) failing to consult with him about the alleged prior conviction and the possibility of pursuing an enhancement hearing and stipulating to the enhancement without his consent.

- 6 -

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Betts*, 31 Neb. App. 737, 989 N.W.2d 441 (2023). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betts, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Betts, supra*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

*Failure to Consult on Regular In-Person Basis.*

Marcoe assigns his trial counsel was ineffective because he failed to meet with him on a regular in-person basis. He argues that when he attempted to contact his attorney, it would often take up to a week for him to respond. Further, he contends several of his attorney's comments during pretrial hearings indicate that he did not have sufficient time to properly handle his case. Marcoe argues that these failures impacted his ability to make a fully informed decision and he might not have pleaded no contest if he was able to fully discuss the plea offer and nature of the charge with his attorney.

We determine the record is sufficient to review this claim on direct appeal. At the plea hearing, the following colloquy occurred:

> THE COURT: . . . Mr. Marcoe, have you had an opportunity to discuss these plea proceedings that we're conducting here today with your lawyer?
>
> [MARCOE]: Yes, I have, Your Honor.
>
> THE COURT: And did he explain this charge to you together with the rights that we've been discussing?
>
> [MARCOE]: Yes, Your Honor.
>
> THE COURT: Did he also discuss with you all of the possible defenses to this charge that you might have if you were to have a trial?
>
> [MARCOE]: Yes, Your Honor.
>
> THE COURT: Are there any defenses that you feel that you may have, or any facts about your case that you think might be helpful to your defense that you've not already discussed with your lawyer?

[MARCOE]: No, Your Honor.

THE COURT: In fact, have you told him everything that you know about your case so that he can represent you properly?

[MARCOE]: Yes, I have.

THE COURT: Are you satisfied with the job that he's done as your attorney?

[MARCOE]: Yes, I am.

THE COURT: Do you feel he's a competent lawyer, he knows what he's doing?

[MARCOE]: Yes, I do.

THE COURT: Have you had enough time to talk with him about your cases?

[MARCOE]: Yeah.

The Nebraska Supreme Court has held that when allegations of ineffective assistance are affirmatively refuted by a defendant's assurances to the sentencing court, there is no basis for relief. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). In making this decision, the court cited to a prior opinion where it had stated,

If the dialogue which is required between the court and the defendant . . . all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*Id.* at 118-19, 835 N.W.2d at 58 (citing *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)).

At his plea hearing Marcoe stated that he had adequate time to discuss the plea agreement and possible defenses with his attorney. As such, we determine the record refutes this claim of ineffective assistance.

*Failures Regarding Alleged Prior Conviction.*

Marcoe next assigns his trial counsel was ineffective because he failed to discuss the alleged prior conviction and the options to challenge the enhancement with him. He asserts that if his attorney had consulted with him before stipulating to the prior offense, the prosecution would have been required to establish the existence of a prior offense to enhance his charge from a Class I misdemeanor to a Class IV felony.

Marcoe was charged with violation of Neb. Rev. Stat. § 28-905 (Reissue 2016). Sections 28-905(1) and (2) state that "Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation commits the offense of operation of a motor vehicle to avoid arrest" and that "[e]xcept as otherwise provided in subsection (3) of this section, any person who violates subsection (1) of this section shall be guilty of a Class I misdemeanor." Subsection 3(a)(i) proceeds to state that:

Any person who violates subsection (1) of this section shall be guilty of a Class IV felony if, in addition to the violation of subsection (1) of this section, one or more of the following also applies:

(i) The person committing the offense has previously been convicted under this section.

We determine the record is sufficient to review this claim on direct appeal. But we first note that Marcoe does not assert that the State would have been unable to prove his prior conviction under § 28-905. He only argues that if he had the opportunity to consult with his attorney prior to the stipulation and challenged the enhancement, the State would have needed to prove the conviction.

With that in mind, we determine that Marcoe is unable to demonstrate that he was prejudiced by these alleged failures of his trial counsel. The record reflects that in July 2017, Marcoe was previously convicted of operating a motor vehicle to avoid arrest. As such, there is not a reasonable probability that a different outcome would have occurred if Marcoe's attorney had consulted him about the prior conviction, sought his consent before making the stipulation, or, in the alternative, challenged the enhancement. Because we believe the State would have been able to prove that Marcoe was previously convicted of the same offense to enhance his charge from a misdemeanor to a felony, we conclude that this claim of ineffective assistance fails.

## CONCLUSION

We conclude the district court did not abuse its discretion in sentencing Marcoe to 2 years' imprisonment, 12 months' post-release supervision, and revoking his license for 2 years. Additionally, we determine his claims of ineffective assistance of counsel are refuted by the record.

AFFIRMED.